UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CARLOS MONTEIRO SILVA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )    Civil No. 20-11144-LTS |
| | ) |
| ANTONE MONIZ, | ) |
| | ) |
| Respondent. | ) |

ORDER ON MOTION TO SEAL AND MOTION TO DISMISS (DOC. NOS. 7, 11)

September 10, 2020

SOROKIN, J.

Carlos Monteiro Silva, a civil immigration detainee housed at the Plymouth County
Correctional Facility ("PCCF"), has filed a petition for a writ of habeas corpus pursuant to 28
U.S.C. § 2241.  Doc. No. 1.[1]  Silva alleges a violation of his Fifth Amendment right to due
process arising from a "substantial risk of serious harm"—specifically, "a heightened and
unacceptable risk of contracting COVID-19"—posed by his continued confinement.  Id. at 16.
The Court resolves two pending motions, one dispositive, in this Order.  Silva has asked the
Court to seal his petition and any references to his "confidential and sensitive medical and
personal information."  Doc. No. 7.  That request, as subsequently clarified, Doc. No. 18, is
DENIED.  The respondent has moved to dismiss, arguing Silva's petition does not sound in
habeas and does not state a viable constitutional claim meriting release.  Doc. No. 11; Doc. No.
12 at 1-2.  For the reasons that follow, the respondent's motion is ALLOWED.

---

[1] Citations to "Doc. No. __" are to documents appearing on the Court's electronic docket;
pincites are to the page numbers appearing in the ECF header.

I.      BACKGROUND

Silva is a thirty-seven-year-old citizen of Cape Verde who came to the United States in 1989, when he was six years old, as a lawful permanent resident.  Doc. No. 12-2 at 10.[2]  His criminal record includes a number of arrests, with a few resulting in convictions, the most recent of which was a 2017 guilty plea to being an accessory after the fact to a 2003 murder.[3]  Id. at 10-11.  After serving his sentence on that charge, Silva was taken into immigration custody pending a decision on an application for asylum and other forms of relief from removal Silva had initiated while in state prison.  Id. at 11.  After a hearing, an immigration judge denied the application on December 11, 2019 in a written decision, concluding Silva was ineligible for certain forms of relief due to his criminal record and finding he had not met his burden of proof as to the discretionary forms of relief that remained available.  Id.

The Board of Immigration Appeals adopted and affirmed the immigration judge's decision on May 28, 2020, rendering Silva subject to a final order of removal as of that date.  Doc. No. 12-1 ¶¶ 25-26.  He has petitioned the First Circuit for review of that decision, though he has not sought a stay of removal while awaiting such review.  Silva v. Barr, No. 20-1593 (1st Cir.).  Pending his removal, Silva remains detained at PCCF.  See 8 U.S.C. § 1231(a) (governing detention of individuals subject to final orders of removal).

---

[2] The facts recounted in this paragraph are derived, in part, from a prior decision of another session of this Court.  That decision denied a previous habeas petition filed by Silva and other immigration detainees at PCCF to challenge their detention, which at that time was pursuant to 8 U.S.C. § 1226(c) because their orders of removal had not yet become final.  See generally Doc. No. 12-2 (reproducing Judge Saris's May 5, 2020 Memorandum and Order in Campbell v. Moniz, No. 20-cv-10697 (D. Mass.)).

[3] The lapse in time between the crime and the plea is apparently explained by Silva having fled just before he was to testify at the trial of an alleged accomplice pursuant to a cooperation agreement, and then having evaded capture for nearly a decade.  Doc. No. 12-1 ¶¶ 17-19.

Silva alleges he "suffers from Hepatitis-C, high Bilirubin, chronic Vitamin D deficiencies, allergies and physical issues with his nose causing breathing difficulties." Doc. No. 1 ¶ 1.  He also alleges he has shown "preliminary signs of high blood pressure," id. ¶ 6, though his petition was not accompanied by any medical records reflecting diagnoses or treatment for the conditions he identifies therein.[4]  In support of his opposition to the pending motion to dismiss, which references none of the alleged medical conditions besides Hepatitis-C, see generally Doc. No. 17, Silva supplied five pages of medical records from November 2018.  Doc. No. 17-1.  Those records confirm he has tested positive for Hepatitis-C.  Id.  Silva also supplied a copy of his written objection to the response he received from PCCF medical staff after he filed a grievance, the focus of which appears to have been testing and treatment related to Hepatitis-C and Vitamin D deficiency.  Doc. No. 17-2.  The objection also references "elevated levels of bilirubin, high blood pressure, [and] respiratory issues."  Id. at 3.

When he moved to dismiss Silva's petition, the respondent submitted exhibits including declarations by Marcia Norat, PCCF's Health Services Administrator, and Joseph McDonald, Jr., the Sheriff of Plymouth County.  Norat recounted Silva's medical records, which she said revealed no "serious . . . or chronic medical conditions that would render him at greater risk for COVID-19 infection."  Doc. No. 12-3 ¶ 3.  She acknowledged Silva had reported to PCCF medical staff that he had received treatment in the past for conditions including Hepatitis-C and

---

[4] Silva's petition was supported by no documents of any kind demonstrating the seriousness of his alleged medical diagnoses or the particular conditions of Silva's confinement.  Incarcerated individuals seeking release based on COVID-19 via habeas petitions or motions for compassionate release filed with this Court have frequently supported their requests with affidavits and other records describing in detail their personal circumstances, including their ability to socially distance, their access to cleaning supplies and personal protective equipment, their sleeping arrangements, and their current medical conditions and any associated treatment.

asthma.  Id. ¶ 6.  According to Norat, "routine lab" results from June 2020 revealed "Silva's

bilirubin was slightly elevated" but his "liver function tests were within normal limits."  Id.

Sheriff McDonald described the measures taken by PCCF in response to the COVID-19

pandemic.  Doc. No. 12-4.  Those measures have included: enhanced intake procedures, with a

quarantine unit housing new detainees "until they clear the incubation period"; the elimination of

family and volunteer visits to the facility; changes to recreation and meal schedules to reduce the

number of detainees in common areas at a given time; and the distribution of face masks.  Id. ¶ 6.

Sheriff McDonald also detailed the relatively small number of confirmed COVID-19 cases

among PCCF staff and detainees through the date of his declaration, explaining the manner in

which the facility responded to each such case.  Id. ¶¶ 8-9.  According to Sheriff McDonald,

PCCF is operating at well under half its capacity; Silva's housing unit can hold sixty-two

detainees but housed only thirty as of June 24, 2020; and Silva is assigned to a cell by himself.

Id. ¶¶ 7, 10.

Besides offering records confirming a positive test for Hepatitis-C, Silva has not directly

addressed, let alone rebutted, the respondent's factual showing regarding the physical conditions

of Silva's confinement or the manner in which the respondent has endeavored to mitigate the

threat COVID-19 presents to those living and working at PCCF.  For example, he has not

disputed Sheriff McDonald's description of the size and population of Silva's housing unit or his

cell, the cleaning procedures PCCF has adopted, the efforts undertaken to permit social

distancing at the facility, or the distribution of both surgical and cloth face masks to detainees.

Apart from the pending motion to dismiss, Silva has also requested the sealing or

redaction of documents submitted to this Court that contain references to his medical condition.

Doc. No. 7.  The Court previously ordered Silva to show cause why it should not unseal all

papers in this case and directed him to submit redacted copies of anything he continued to believe required sealing. Doc. No. 15. Silva responded to that Order on August 12, 2020. Doc. No. 18.

Silva's motion to seal and the respondent's motion to dismiss are now ripe for resolution, no party has requested oral argument, and the Court decides both matters on the papers. D. Mass. Local Rule 7.1(d), (f).

II.    DISCUSSION

A.    Motion to Seal (Doc. No. 7)

As clarified in response to the Court's show-cause Order, Silva's sealing request is limited to specific paragraphs in his petition and various other pleadings referencing "Hepatitis-C."[5] See Doc. No. 18 (urging that Silva's "diagnosis is personal and sensitive medical information that can cause [him] prejudice and harm should his condition become public knowledge," and that sealing this information will "not impact the public's ability to generally access the ongoing litigation"). Though the respondent has not opposed Silva's request, "the public's right of access to [judicial records] is vibrant," and the Court is bound to consider whether it is outweighed here such that sealing is appropriate. Siedle v. Putnam Invs., Inc., 147 F.3d 7, 10 (1st Cir. 1998).

Put simply, Silva asks the Court to seal or redact references to the one fact that is at the very heart of his habeas petition. Though he argues his diagnosis of Hepatitis-C is the factor

---

[5] Though the Court directed Silva to provide redacted copies of any documents he believed contained information that warranted sealing, Doc. No. 15, Silva—who is represented by counsel—submitted no redacted versions of the relevant documents with his show-cause response. Doc. No. 18. Because the Court denies Silva's request except as to two items that will remain sealed in their entirety, it need not linger over Silva's (counsel's) failure to comply with this aspect of the show-cause Order.

which requires his release from custody for the duration of the COVID-19 crisis, he urges the

Court to remove that diagnosis from the public record in this case due to his personal (and not

altogether unreasonable) desire that his medical condition remain private.  Doc. No. 18 at 3.

Silva summarily suggests that public knowledge of his diagnosis "can cause [him] prejudice and

harm."  Id.  However, he offers no support for this allegation, nor does he specify the sort of

prejudice or harm he fears.

Furthermore, to the extent Silva suggests "the public's ability to generally access"

information pertaining to these proceedings will not be impeded by redaction of a central fact

driving Silva's petition and this Court's consideration of his claim, id., the Court disagrees.  In

these circumstances, Silva has simply failed demonstrate any justification for sealing or

redacting references to Hepatitis-C that is sufficient to overcome the "strong and sturdy"

presumption in favor of public access.[6]  Fed. Trade Comm'n v. Standard Fin. Mgmt. Corp., 830

F.2d 404, 410 (1st Cir. 1987).

The Court will, however, permit the sealing of two specific items filed in this case.  The

first is a short declaration filed in support of Silva's motion to seal by a third party who includes

in her submission various personal identifying information of her own.  Doc. No. 7-1.  The

second is the exhibit containing five pages of Silva's medical records submitted with Silva's

opposition to the motion to dismiss, as those records contain Silva's personal identifiers and

more detailed medical information.  Doc. No. 17-1.  The public's right of access will not be

---

[6] A number of other courts have not sealed such information.  See, e.g., United States v. Pullen,
No. , 2020 WL 4049899, at *6 (D. Kan. July 20, 2020) (granting compassionate release in a
decision referencing the defendant's chronic Hepatitis-C and the liver disease that resulted
therefrom); United States v. Stephenson, No. , 2020 WL 2566760, at *6 (S.D. Iowa May 21,
2020) (same); Chester v. King, No. 16-cv-01257, 2019 WL 5420213, at *2 (E.D. Cal. Oct. 23,
2019) (denying motion to seal documents containing information pertaining to party's Hepatitis-
C diagnosis, where such diagnosis was at issue in the case).

substantially impaired by the sealing of those items, as the first contains nothing pertinent to the issues presented in Silva's petition, and the most pertinent information contained in the second is summarized and referenced in other submissions that will not be sealed, thus allowing the public to access and appreciate the matters this Court is asked to decide.

Accordingly, the motion to seal is ALLOWED only insofar as Doc. Nos. 7-1 and 17-1 are concerned, and is otherwise DENIED.

B.      Motion to Dismiss (Doc. No. 11)

The respondent advances two grounds for dismissal.  First, he suggests that the claim Silva asserts is properly viewed as a challenge to his "conditions of confinement" that "fall[s] well outside the core of habeas corpus."  Doc. No. 12 at 10-11.  The same respondent recently advanced the same argument to this Court in another action styled as a § 2241 petition asserting claims for release based on COVID-19.  Baez v. Moniz, No. 20-cv-10753, ECF No. 40 (D. Mass. Apr. 21, 2020).  This Court rejected the respondent's jurisdictional challenge in that action, and it does so here for essentially the same reasons:  "habeas relief plainly is available to a petitioner challenging the fact or duration of his confinement and seeking release from such confinement"; "neither the Supreme Court nor the First Circuit has categorically foreclosed petitioners like [Silva] from invoking federal habeas jurisdiction"; and Silva alleges that "[r]elease is the only relief that can adequately protect" him from unconstitutional treatment.  Baez v. Moniz, No. 20-cv-10753, 2020 WL 2527865, at *1 (D. Mass. May 18, 2020); Doc. No. 1 at 12.   For these reasons, and "in the extraordinary circumstances presented by the COVID-19 pandemic, the Court finds that" Silva's petition "sound[s] in habeas," at least in part.  Baez, 2020 WL 2527865, at *2.  Thus, the motion to dismiss is DENIED insofar as it challenges this Court's jurisdiction to entertain the petition in the first instance.

The respondent's second challenge is the obstacle on which Silva's petition founders.  A civil detainee like Silva seeking release based on an assertion that the conditions of his confinement create an unconstitutional risk to his safety invokes the Fifth Amendment's Due Process Clause.  But, as this Court has explained, "the First Circuit has not endorsed" the view that such a claim is subject to "a less daunting test . . . than [a] 'deliberate indifference' showing."  Baez, 2020 WL 2527865, at *6-7.  To state such a claim, then, Silva had to plausibly allege that the respondent "had actual knowledge of impending harm, easily preventable, and yet failed to take the steps that would have easily prevented that harm."  Zingg v. Groblewski, 907 F.3d 630, 635 (1st Cir. 2018) (quotation marks and citation omitted).  This he has not done.

This Court has elsewhere concluded that detainees challenging PCCF's response to the COVID-19 crises were not likely to succeed on the merits of substantially similar Fifth Amendment challenges.  See Baez, 2020 WL 2527865, at *7-9 (denying injunctive relief to class of pretrial detainees at PCCF, in a case where the petitioner had adduced more evidence to support their claims than Silva has here, finding no likelihood of success due to the apparent reasonableness of the steps the respondent had taken to limit the risk of the virus entering the facility, to control and mitigate against the spread of the virus inside the facility, and to identify and monitor detainees and staff who might have been exposed to the virus).  Silva has made no allegations, let alone offered evidence, to suggest conditions at PCCF in general are different now than they were when the Court rendered its decision in Baez, or that conditions in his housing unit differ in any material respect from the conditions in the units of the federal detainees considered in Baez.[7]  As such, the Court finds he has not plausibly alleged a Fifth

---

[7] According to the most recent Special Master's Weekly Report filed in Committee for Public Counsel Services v. Chief Justice of the Trial Court, No. SJC-12926, to date there have been only four cases of COVID-19 among detainees at PCCF, there are currently no "active" cases in

Amendment claim arising from the general conditions at PCCF or the respondent's overall response to the current crisis.

Silva's attempt to supplement a general challenge to PCCF's COVID-19 response by alleging he faces increased risk due to his unique combination of health factors also fails. Silva has not alleged he suffers from any condition that places him at an elevated risk of suffering serious illness or death from COVID-19, according to the Centers for Disease Control and Prevention ("CDC"),[8] let alone that the respondent knew of such a condition and was deliberately indifferent to it. Silva is in his thirties. He is not an "older adult" such that his age places him at greater risk. Although he apparently suffers from Hepatitis-C, a liver condition that can be serious, the only medical records he has offered show that he tested positive for Hepatitis-C less than two years ago and at a level so low as to be "undetectable." Doc. No. 17-1. The records do not establish, nor do any of his submissions claim, that his Hepatitis-C is chronic or has otherwise meaningfully compromised his liver or his immune system.[9] Cf. Doc. No. 12-3 ¶ 6 (explaining recent tests revealed Silva's liver is functioning "within normal limits"). Though the CDC lists "chronic liver disease, especially cirrhosis" as a condition that "might" increase one's risk of serious illness arising from COVID-19, the record here does not come close to suggesting Silva's Hepatitis-C (or his "high bilirubin") rises to that level.[10]

---

[footnote] the facility, and the facility has tested fifty-five more detainees than it had at the time of this Court's decision in Baez. See App'x at 33-34, Special Master's Amended Report (Sept. 3, 2020), available at https://www.mass.gov/doc/sjc-12926-special-masters-weekly-report-932020/download (last visited Sept. 10, 2020).

[8] See CDC, "People Who Are at Increased Risk for Severe Illness," http://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Aug. 28, 2020) [hereinafter, "CDC website"].

[9] This distinguishes Silva from the individuals who were granted compassionate release in the cases cited in note 6, supra, in part due to chronic Hepatitis-C or liver damage resulting from it.

[10] Silva asks the Court not to penalize him "for the failure of the Commonwealth of Massachusetts to convey his medical records to" PCCF and immigration officials, or for his

Indeed, none of the medical conditions Silva identifies in his petition are on the list of conditions the CDC has recognized as rendering a person medically vulnerable to COVID-19, nor has he alleged facts sufficient to show he suffers from any of the additional conditions the CDC website identifies as those which "might" increase his risk of serious illness. His reference to "a preliminary high blood pressure" is not an allegation of hypertension (another condition on the CDC's secondary "might increase risk" list), and none of the other conditions he claims appear anywhere on the CDC's lists of conditions that either do or might make someone vulnerable to COVID-19. See Doc. No. 1 ¶ 1 (claiming chronic Vitamin D deficiency, allergies, and unspecified "physical issues with his nose").[11]   In these circumstances, Silva has not plausibly alleged he is especially medically vulnerable to COVID-19, nor that the respondent has been deliberately indifferent such that a Fifth Amendment claim lies.[12]

This ends the matter. Silva's petition advances no other bases for release. Cf. Campbell v. Moniz, No. 20-cv-10697, ECF No. 1 (D. Mass. Apr. 8, 2020) (including claims on behalf of Silva and other immigration detainees at PCCF challenging their detention based on its length and the absence of a bond hearing). Though the Court dismisses Silva's petition, nothing in this

---

current custodians' failure "to request complete medical records." Doc. No. 17 at 2. However, Silva himself has produced to the Court at least some of the relevant records to which he refers (i.e., records of his Hepatitis-C testing while in the Commonwealth's custody), those records describe his Hepatitis-C as "undetectable," and PCCF medical staff has acknowledged his report of a prior diagnosis of Hepatitis-C but has attested that recent tests reflect his liver is functioning normally. In these circumstances, Silva has not established he is entitled to pre-dismissal discovery as to his medical condition.

[11] Though Silva does not raise it, the respondent's submission suggests he may have been treated for asthma in the past. Doc. No. 12-3 ¶ 6. This, however, does not substitute for an allegation by Silva that he presently suffers from moderate-to-severe asthma, such that the CDC would categorize him as a person who "might be at an increased risk" if he were to contract COVID-19.

[12] Silva's failure to plausibly state a Fifth Amendment claim is fatal to his petition as a whole, foreclosing further consideration by this Court of both his request for release and his request for an order enjoining his hypothetical or eventual transfer to a different facility.

decision precludes him from pursuing grievances within PCCF related to his medical care, including whether he is receiving necessary testing and treatment for Hepatitis-C or any other condition from which he suffers, nor does it prevent him from filing a separate action challenging his medical care and/or the conditions of his confinement pursuant to § 1983.

III.    CONCLUSION

In sum, Silva has not overcome the weighty presumption favoring public access to judicial records and documents except insofar as his medical records and certain personal identifiers of a third-party are concerned; he has not plausibly alleged that he suffers from any condition placing him at an increased risk of severe illness should he contract COVID-19 or that the respondent has acted with deliberate indifference in his response to the virus; and he has identified no other legal basis for release.  Thus, it is hereby ORDERED as follows:

1)  Silva's motion to seal (Doc. No. 7) is ALLOWED IN PART and DENIED IN PART as explained above.  The Clerk shall UNSEAL all documents in this case except for Doc. No. 7-1 (which includes personal identifiers for a third party) and Doc. No. 17-1 (which contains Silva's medical records), both of which shall remain sealed.

2)  The respondent's motion to dismiss (Doc. No. 11) is ALLOWED.

3)  Silva's habeas petition (Doc. No. 1) is DISMISSED.

SO ORDERED.

 /s/ Leo T. Sorokin
United States District Judge